IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID OTTINGER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHESTER TOWNSHIP, et al. | : | NO.  14-4432 |

<u>MEMORANDUM</u>

L. Felipe Restrepo, J.                                                                                February 23, 2015

Defendants Chester Township, Kenneth Coalson, and Stanley Kester move to dismiss Plaintiff David Ottinger's Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[1]  Defendant Joseph Fitzgerald separately moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6).[2]  Upon consideration of the parties' moving papers, and for the reasons that follow, the Defendants' motions to dismiss will be granted and the Amended Complaint will be dismissed without prejudice.

I.     **BACKGROUND**

Plaintiff David Ottinger is a resident of the Borough of Brookhaven, located in Delaware County, Pennsylvania.  Am. Compl. ¶ 1.  Ottinger addressed the Chester Township Council ("Council"), the legislative body for neighboring Chester Township, on several occasions to express his views about the Chester Township Police.  <u>Id.</u> ¶ 12.  Ottinger often spoke about an incident that occurred several years ago, during which he alleges Chester Township police

---

[1] Ottinger filed his Amended Complaint against the Defendants on September 8, 2014 (ECF No. 8).  Chester Township, Coalson, and Kester timely filed their Motion to Dismiss Plaintiff's Amended Complaint on September 17, 2014 (ECF No. 10).  Plaintiff timely filed a response in opposition on November 4, 2014 (ECF No. 14), and Defendants filed a timely reply in support on November 7, 2014 (ECF No. 15).

[2] Defendant Joseph Fitzgerald timely filed his Motion to Dismiss Plaintiff's Amended Complaint on September 29, 2014 (ECF No. 11).  Plaintiff filed a timely response in opposition on November 18, 2014 (ECF No. 17), and Defendant Fitzgerald did not file a reply.

1

officers entered his home after his wife's death, leading to the theft of $6,500 from his home. Am. Compl. ¶ 15.

On multiple occasions, the Delaware County Times reported on Ottinger's remarks at the Council meetings, as well as responses to Ottinger's remarks. See, e.g., Am. Compl. Exs. A-C. At the September 5, 2013, Council meeting, Ottinger allegedly stated, among other things, that "[y]ou have bad police . . . You have criminals with badges. You need a good, professional police force, and you will not get that as long as Council promotes illegal behavior." Am. Compl. ¶ 15.  In response, Stanley Kester, President of the Council, allegedly told Ottinger the following: "I've told you before, get an attorney . . . If you think it's a legal matter, get an attorney and contact our solicitor." Am. Compl. ¶ 16; Am. Compl. Ex. C. Ottinger interprets this statement to mean that he can only speak to Council privately, and via an attorney. Am. Compl. ¶¶ 17-20, 22, 24.

On or about October 3, 2013, Joseph Fitzgerald, President of the Delaware County Fraternal Order of Police appeared at a Council meeting to address several statements made about the Chester Township Police Department at the September 5, 2013, Council meeting. Am Compl. ¶ 15; Am. Compl. Ex. A.  Fitzgerald responded to criticisms levied by then Council Vice President Nathaniel Ellis, and also responded to comments made by Ottinger. Id. Fitzgerald allegedly stated the following: "If I were here, I would have been up screaming . . . If there are going to be attacks on the police department by residents or council, we are going to need a much bigger room when the buses start coming in." Id. Regarding Ottinger specifically, Fitzgerald allegedly stated the following: "The resident who made those comments, if he's here, he's already being looked into. I've contacted an attorney to look into civil litigation. He may have a problem and there is an investigation going on." Id. Ottinger interprets this statement to

mean that "he has been placed under investigation which is either participated in or sponsored by [Council] and which is retaliation for his expression of criticism of the [Chester Township] police." Am. Compl. ¶ 21. Following the October meeting, Chester Township Police Chief Kenneth Coalson stated that he was grateful for the support he received from his department and residents, and that he appreciated Fitzgerald speaking out publicly on his behalf. Am Compl. ¶ 15; Am. Compl. Ex. A.

Defendants moved to dismiss Plaintiff's Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Amended Complaint originally set forth two counts against Defendants: Count I – retaliation for exercise of his First and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983; and, Count II – unreasonable restraint on the exercise of First Amendment rights in violation of 42 U.S.C. § 1983. Plaintiff has since withdrawn his assertion that the Fourteenth Amendment applies to Count I, and has withdrawn Count II entirely. Pl.'s Br. in Opp'n 1 (ECF No. 14).

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 555). Thus, a plaintiff must present "enough facts to raise a

reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action.  Id.  However, "the Court need not accept as true 'unsupported conclusions and unwarranted inferences,' Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's 'bald assertions' or 'legal conclusions,' Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)."  Kofsky v. Unum Life Ins. Co. of Am., 2014 WL 4375725, at *2 (E.D. Pa. Sept. 2, 2014).

When considering a motion to dismiss, the court looks to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  To determine whether dismissal is appropriate, the court uses a two-part analysis.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d. Cir. 2009).  First, the court separates the factual and legal elements of the claim and accepts as true all of the complaint's well-pleaded facts.  Id. at 210–11.  Next, the court determines whether the complaint alleges facts sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 211 (quoting Iqbal, 556 U.S. at 679).  In this two-part analysis, "[d]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."  Iqbal, 556 U.S. at 663–64 (citing Twombly, 550 U.S. at 556).

## III.  DISCUSSION

To plead a First Amendment retaliation claim pursuant to Section 1983, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).  "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to

deter a person of ordinary firmness from exercising his First Amendment rights.'" McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). "'Where a public officials alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow, such speech does not adversely affect [one's] First Amendment rights, **even if defamatory**.'" Municipal Revenue Services, Inc. v. McBlain, 347 F. App'x 817, 825 (3d Cir. 2009) (quoting Suarez Corp. Industries v. McGraw, 202 F.3d 676, 687 (4th Cir. 2000)).

Defendants do no contest that Plaintiff sufficiently alleged that he engaged in constitutionally protected conduct by addressing the Council on numerous occasions.  Rather, Defendants challenge the sufficiency of Plaintiff's allegations as to the second element, that there was retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

    A.    **Defendant Kester's Comment**

Plaintiff alleges that the following statement by Defendant Kester constitutes unlawful retaliation against Plaintiff for exercising his First Amendment rights: "I've told you before, get an attorney . . . If you think it's a legal matter, get an attorney and contact our solicitor." Am. Compl. ¶ 16; Am. Compl. Ex. C.  Plaintiff apparently interpreted Defendant Kester's words to mean "[t]hat is to say do not speak to council -- hire an attorney." Am. Compl. ¶ 16.  Further examination of the Amended Complaint reveals that Plaintiff didn't view Defendant Kester's statement as threatening an absolute bar to communicating with the Council.  Rather, Plaintiff believes that "[i]n retaliation for his speech, [Chester Township] limited his right to speak by requiring that he do so through counsel who would speak privately and directly to the [Chester

Township] solicitor thereby precluding Mr. Ottinger's right to speak publicly."  Am. Compl. ¶ 36.  According to Plaintiff, this policy was solidified when no other member of Council spoke up to rebuke Kester's comments.  Id. ¶ 17.

As a preliminary matter, while Plaintiff interpreted Defendant Kester's words to mean "do not speak to council," and also interpreted the ensuing silence to mean that Defendant Kester's represented an official policy of the township, the Court need not accept unsupported conclusions or unwarranted inferences.  See Doug Grant, 232 F.3d at 183–84.  Indeed, "[c]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable.  We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner."  City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998).  Here, Plaintiff's unwarranted conclusion that Defendant Kester's comment and the ensuing lack of objection means that Plaintiff can only communicate with Council through an attorney deserves no weight.[3]  The Amended Complaint is entirely reliant upon such conclusions and contains no facts that demonstrate a plausible claim for relief against Defendant Kester.

Importantly, the Third Circuit has held that, where a public official's alleged retaliation is in the nature of speech, "in the absence of a threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow," such speech does not adversely affect First Amendment rights.  McBlain, 347 F. App'x at 825.  The Amended Complaint is devoid of any factual allegations that would satisfy the threat/coercion/intimidation

---

[3]   Even if the Court were to view Plaintiff's allegations about Kester's comment as something other than completely conclusory, it appears that the allegations would be legally insufficient to establish the creation of a municipal policy attributable to Chester Township.  See Seneca v. New Hope Borough, 2002 WL 321663, at *3 (E.D. Pa. Feb. 27, 2002) ("The actions of a single council member, however, do not establish official policy or bind the municipality.  Approval of the conduct of a councilman cannot be inferred from the mere silence of other council members.") (citations omitted).

requirement with respect to Defendant Kester's statement. In the absence of any such factual allegations, Defendant Stanley Kester's words do not amount type of conduct necessary to allege retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Thus, the portion of Plaintiff's claim that is based on Defendant Kester's comment will be dismissed.

### B. Defendant Coalson's Comment

Plaintiff alleges that the following sentiment expressed by Defendant Coalson, as reported by the Delaware Count Times, constitutes unlawful retaliation against Plaintiff for exercising his First Amendment rights: "Coalson said he was grateful for the support he has received from his department and residents. He added that he appreciated Fitzgerald speaking out publicly on his behalf." Am Compl. ¶ 15; Am. Compl. Ex. A.

As with Defendant Kester's comment, the allegations about Defendant Coalson's conduct do not amount to the type of threats, coercion, or intimidation necessary to establish the second element of a First Amendment retaliation claim against a public official. Plaintiff's allegations with respect to the retaliatory nature of Defendant Coalson's speech are so thoroughly lacking that allowing the claim to proceed as pled would impermissibly "trivialize" the First Amendment. See, e.g., Zimmerlink v. Zapotsky, 539 F. App'x 45 (3d Cir. 2013) (affirming grant of summary judgment to defendant on a First Amendment retaliation claim where the defendant was a public official who responded to comments made by plaintiff at a public city council meeting). Defendant Coalson's statements that he was grateful for the support he received from those who spoke on his behalf, including the department, residents, and Defendant Fitzgerald, are insufficient to deter a person of ordinary firmness from exercising his First Amendment rights. These comments do not approach "the extreme conduct" required to support a First

Amendment retaliation claim. See, e.g., Zimmerlink, 539 F. App'x at 50.  Thus, the portion of Plaintiff's claim that is based on Defendant Coalson's statement will be dismissed.

    **C.    Defendant Fitzgerald's Comments**

Plaintiff contends that the following statements by Defendant Fitzgerald constitute unlawful retaliation against Plaintiff for exercising his First Amendment rights: (1) "[t]he resident who made those comments, if he's here, he's already being looked into. I've contacted an attorney to look into civil litigation. He may have a problem and there is an investigation going on;" and (2) "[i]f I were here, I would have been up screaming. If there are going to be attacks on the police department by residents or council, we are going to need a much bigger room when the buses start coming in." Am. Compl. ¶ 15; Am. Compl. Ex. A.

A Section 1983 claim is only viable where the defendant acts under color of state law. The Amended Complaint alleges that "the Delaware County Fraternal Order of Police (FOP) has *de facto* control over the Chester Township police that it can cause action to be taken by the police should [sic] if it chooses to do so. In so far as it exercises that control, it acts with color of law.  Mr. Fitzgerald as the President of the Delaware County FOP is empowered with that control and acts when he chooses to do so under color of law." Am. Compl. ¶ 3 n.1.  However, Defendant Fitzgerald is not a state actor simply because he is the president of a union that represents police officers. See Talley v. Feldman, 941 F. Supp. 501, 512 (E.D. Pa. 1996) ("Labor unions have been traditionally regarded as private entities, despite the imposition of regulatory provisions upon them.  Therefore, a labor union may not be sued for constitutional violations.") (citations omitted); Slater v. Susquehanna County, 613 F. Supp 2d 653, 660 (M.D. Pa. 2009), aff'd 465 F. App'x 132 (3rd Cir. 2012) (dismissing claims pursuant to Section 1983 against a union's business representative because the representative was a private actor, not

operating under color of state law). Setting aside Plaintiff's conclusory statements about Defendant Fitzgerald's control of the Delaware County FOP, and the Delaware County FOP's *de facto* control of the Chester Township Police Department, the Court can only view the remaining allegations in the Amended Complaint as potentially stating a claim against Defendant Fitzgerald in his capacity as a private actor.

Private actors can be liable under § 1983 where their actions can be "fairly attributable to the state." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982). To determine whether a private actor's behavior may be fairly attributed as that of the state, the Third Circuit "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) 'whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state'; (2) 'whether the private party has acted with the help of or in concert with state officials'; and (3) whether 'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir.1995)). The factual allegations against Defendant Fitzgerald in the Amended Complaint do not state a plausible retaliation claim under any of these three potential theories. Accordingly, the portion of Plaintiff's claim that is based on Defendant Fitzgerald's comments will be dismissed.[4]

---

[4] The claim against Defendant Fitzgerald could also be dismissed under the same logic that warranted the dismissal of the claim against Defendant Kester. The Court, even at this stage, does not need to accept Plaintiff's conclusions that Fitzgerald's comments (Ottinger "being looked into" by Fitzgerald's attorney; possibility of "civil litigation;" and that there was "an investigation going on") mean that "he has been placed under investigation which is either participated in or sponsored by [Chester Township Council]." While Plaintiff's Amended Complaint is woefully unspecific about the type of investigation he believes he has been placed under, to the extent that Plaintiff means to say he believes he is under investigation by the Chester Township Police Department or some other township investigative agency, the Court need not accept such a far-fetched conclusion. Fitzgerald's comments, as they are set forth by Plaintiff, make no reference to an official police investigation, nor does this Court believe that

**D. Official Capacity Claims**

Thus far, the claims against Defendants Kester, Coalson, and Fitzgerald have been addressed to the extent that they are claims brought against them in their individual capacities. However, Plaintiff has sued the individual defendants in their official capacities as well. The claims against the individual defendants in their official capacities will be dismissed, as they are duplicative of the claim Chester Township itself. See Kentucky v. Graham, 473 U.S. 159, 169 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under Monell, local government units can be sued directly for damages.").

**E. Chester Township Liability**

Plaintiff also brings a claim against Chester Township directly, purporting to state a claim for municipal liability pursuant to Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). However, a successful Monell claim against a municipal defendant requires an underlying constitutional violation. See Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003). Here, the Amended Complaint fails to state a claim for any underlying constitutional violation. Furthermore, the Amended Complaint fails to articulate a legally sufficient theory for the creation of municipal policy, as Plaintiff's theory of policy creation (statement by a council person, followed by the silence of other council persons) has been explicitly rejected by courts in this district. See Seneca v. New Hope Borough, 2002 WL 321663, at *3 (E.D. Pa. Feb. 27, 2002) ("The actions of a single council member, however, do no establish official policy of bind the municipality. Approval of the conduct of a councilman

---

Fitzgerald would be aware of or be able to comment publically on an ongoing official investigation. Rather, Fitzgerald's comments, as alleged by Plaintiff, refer to an investigation conducted by a private attorney for the purpose of evaluating "civil litigation." Once Plaintiff's conclusory statement about Fitzgerald's comments is set aside, Plaintiff's Amended Complaint fails to state a retaliation claim against Defendant Fitzgerald.

cannot be inferred from the mere silence of other council members.") (citations omitted). Accordingly, the Amended Complaint fails to state a claim for municipal liability pursuant to Monell, and that claim must be dismissed. See, e.g., Frazer v. Temple University, 25 F. Supp. 3d 598, 608; Miles v. City of Philadelphia, 2013 WL 125186, at *5 (E.D. Pa. Jan. 10, 2013).

## IV.    CONCLUSION

For these reasons, the Defendants' motions to dismiss the Amended Complaint pursuant to Rule 12(b)(6) will be granted, and the Amended Complaint will be dismissed without prejudice. An appropriate order follows.